## THE STATE v. HYATT, Appellant.

**Division Two, February 1, 1904.**

1. **Criminal Law:** ROBBERY: IDENTIFICATION OF DEFENDANT: QUESTION FOR JURY. The identification of a defendant in a prosecution for robbery, is a question of fact for the determination of the jury. And where the prosecuting witness positively identifies the defendant, and he is corroborated on this point by the evidence of another witness, the jury are justified in finding that it was defendant who committed the crime.

2. ———: ———: WATCH FOUND ON PREMISES: EVIDENCE. Defendant was the proprietor of a saloon at the time of the robbery on January 7. He was arrested on the night of the robbery and his saloon was locked up and remained closed until February 12, following, at which time an officer searched the cellar of the saloon and found therein a watch which was identified by the prosecuting witness as the one of which he had been robbed. It was shown that there was a trap door behind the saloon bar leading down some steps into the cellar. *Held*, that the court properly admitted evidence as to the finding of the watch, since it tended to establish that the robbery had been committed by defendant at the time alleged.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Douglas*, Judge.

AFFIRMED.

*Chas. J. Maurer* for appellant.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) The evidence shows a complete identification of the defendant, and completely connects him with the commission of the crime. It was a question for the jury to pass upon under the instructions of the court. State

v. Kenney, 81 Mo. 101; State v. Green, 117 Mo. 298. (2)    The finding of the watch in defendant's saloon, together with the evidence showing that he was present at the time the offense was committed, justified the court in permitting the testimony of the discovery of the watch to be introduced, showing recent possession of the stolen property.    Such possession raises the presumption that the possessor is the thief and the strength of the presumption arising from the possession of the property depends largely upon the length of time intervening between the taking and the finding.    State v. Gray, 37 Mo. 463; State v. Brown, 115 Mo. 409; State v. Moore, 101 Mo. 316.    The evidence showing the watch to have been found in defendant's saloon was admissible along with all the other evidence in the case.    The jury had a right to consider its probative force along with all the other evidence, and to give it such weight as they thought proper.

GANTT, P. J.—At the February term, 1903, of the circuit court of the city of St. Louis, Criminal Division No. 8, the defendant Frank Hyatt was convicted of robbery in the first degree and his sentence assessed at seven years in the penitentiary.    From that conviction he appeals.

The indictment is in the usual and approved form and it is unnecessary to set it out at length.

The defendant was duly arraigned and entered his plea of not guilty.

The evidence tends to prove that the defendant was the proprietor of a saloon at the northeast corner of Ninth and Walnut streets in the city of St. Louis.    The alleged robbery took place on the 7th day of January, 1903, on Walnut street, between Seventh and Eighth streets in said city near ten o'clock on the night of that day.

About ten o'clock of that night, Lum Webb of Fort Smith, Arkansas, went into defendant's said saloon, hav-

ing on his person at the time a gold watch and chain and about eighty dollars in money. The defendant introduced himself to Webb and asked him to take a drink. Webb declined to drink but took a cigar. Webb then invited the defendant, Hyatt, to drink with him, but Hyatt refused to drink because Webb had refused to drink with him. About that time a woman, one Maud Coffey, came in and took a seat at a table in the saloon, whereupon Hyatt and Webb also sat down at the same table. The party then took one or two drinks together when Webb got up and started to the St. James hotel on Broadway, where he was stopping. The woman followed him out of the saloon. He had gone but a short distance when the defendant, Hyatt, and one Hildebrant overtook him and threw him down, the defendant striking him in the face and kicking him after he was down. They then forcibly took from him his watch and money, but did not get the chain.

The principal point urged for a reversal is the insufficiency of the evidence to identify defendant as one of the robbers. The evidence on this point was as follows:

Webb testified:

"He (meaning defendant) made himself acquainted and we conversed for some time. The conversation was general. I do not remember all that occurred, but a little of everything. I believe the first time I took another cigar and put it in my pocket and when I asked him what he would take he said, 'I don't like to drink with a man who will not drink with me.' 'Well,' I says, 'I can take a little glass of beer,' and he drank whiskey, and this woman came up. She was there sitting down at a table just in the back of the room. I do not know her name. I have seen her. She is out there in that room. She came up and took a drink. They both drank whiskey and in the meantime the music kept on playing and we sat down at a table in the back end of the room and I believe she ordered drinks and paid for

them. I took a small glass of beer at that time and got kinder strangled from some cause or other. I then got up and went to the back of the room and then started out at the front door and she followed me. I started up Walnut street towards the hotel and she started along with me. I wanted to go to the hotel, as I had been up all the night before, losing sleep. I had on an overcoat buttoned up at the collar. It was a chilly, raw night, and just as I left this woman I heard something on the sidewalk and I turned and looked over my shoulder and this fellow Hildebrant came along and kinder jumped on me and pinioned his arms around me and Hyatt, the defendant, which I took to be Hyatt, passed around me and hit me across the head with something. I jerked my right hand loose and made a struggle and he hit me again. I had on a kind of a plush cap, a railroad cap, and he commenced going through my pockets. This fellow Hyatt kept telling him, 'Inside vest pocket, inside vest pocket,' and when they got into the pocket Hildebrant said, 'Get his watch,' and when they broke and ran off I started out to find the police. They got me down on my right side and my cap was pushed over my eyes until I could not see. There was another man there besides Hyatt and Hildebrant. I do not know who he was. I never seen him. I can not identify him. The only party I can identify that I got a look at while I was being robbed are these two men, the defendant Hyatt, and Hildebrant. They succeeded in taking my watch and money from my inside pocket. As soon as they got the watch and money, they ran away, towards the saloon, I think. I can not say how many blows I was hit. He hit me twice, with two hard blows, and then this fellow Hyatt, he was standing over on the right, and he kicked me several times."

On cross-examination the prosecuting witness testified as follows:

"Q. Who hit you? A. That man right there, Hyatt. He stepped around on my right and hit me.

Q. But you said a moment ago you took him to be Hyatt. You do not know it was Hyatt? You took him to be Hyatt? A. It was Hyatt. Q. You now say it was Hyatt? You are certain about that, are you? A. Well, yes. Q. Why did you hesitate if you are certain? A. Well, he was the man that was standing there. They all rushed around and I thought some of the rest of them might hit me. Hyatt hit me all right and then kicked me and stood punching me with his toe.''

The witness identified the defendant among forty persons at police headquarters.

Maud Coffey testified that she lived at 1452 College Avenue, St. Louis; and that she was in the saloon kept by the defendant on the night of January 7th. She said she had been sent for twice before she came; that Hyatt, defendant, came down to get her and told her that some gentleman was up there; that she could get something off of him if she would go. She went with him to the saloon about ten o'clock and when she got there she found the prosecuting witness. Hildebrant introduced her to him. ''Hildebrant is a partner of the defendant. I stayed in the saloon until sometime between ten and twelve o'clock, when Webb and I left. We went east on Walnut street. When we got down between Seventh and Eighth on Walnut these three fellows came up and Hildebrant threw his arm around Webb and pulled him down and then Hyatt kicked him; Hyatt was standing and he kept hollering 'Inside vest pocket, inside vest pocket.' Hyatt kicked him once.''

I. The defendant insists the foregoing evidence will not support the verdict. The identification of the defendant as one of the perpetrators of the robbery was a question of fact for the determination of the jury. The jury saw and heard the witnesses on this point and if they believed the evidence of Webb, as they obviously did, it was sufficient to show that he was one of the robbers. Again and again he stated defendant was one of the men who assailed and robbed him. He had seen the

defendant just prior to the robbing, in his saloon. Had drunk with him and sat at the table with him and had a good opportunity to observe him, and the robbing occurred so soon after he left the saloon that there is nothing improbable in his evidence that he recognized defendant as one of the party who robbed him.

Moreover, he was corroborated by Maud Coffey. While it is true she testifies to her own bad character for lewdness, the defendant's evidence shows she was in defendant's saloon that night and went out of the saloon at the same time that the prosecuting witness did and was in a position to hear and see the matters which she detailed on the witness stand. The jury saw her and observed her demeanor and it was their province to believe her and Webb or reject their evidence. If they believed them, there was no reason to doubt the identification of defendant as one of the robbers. The rule is firmly established that the verdict of the jury will not be disturbed where there is substantial evidence to support it. [State v. Kinney, 81 Mo. 101; State v. Green, 117 Mo. 298; State v. Howard, 118 Mo. 127.]

II. It is insisted that error was committed in permitting the State to prove that on the 12th of February following the 7th of January, 1903, the night of the robbery, officer Lawton took a lantern and went down into the cellar of the saloon and found Webb's watch, of which he had been robbed, in a pile of dirt and debris. To understand this objection it should be stated that on the night of the robbery the policeman arrested both Hildebrant and Hyatt, the proprietors of the saloon, and closed the saloon and Hildebrant locked the doors of the saloon and put the key in his pocket and the saloon remained locked up until Lawton made the search in the cellar and found the watch. The evidence further disclosed that there was a trap door behind the bar leading down some steps into the cellar under which the watch was found. The court did not instruct on the possession of the stolen property, but simply admitted the evi-.

dence of the finding of the watch in the cellar of defendant's saloon along with the other testimony, tending to show that the premises had remained *in statu quo* from the night of the robbery until the watch was found, and that the defendant was in the saloon and in charge of it after the robbery. The evidence was clearly admissible in such circumstances. It was a pregnant circumstance which the jury were at liberty to consider in connection with all other evidence in the case. Among other things it strongly tended to establish the principal fact that Webb was actually robbed of his watch that night, as the watch was fully identified by Webb as the one taken from him by force that night.

Our conclusion is that there was no error committed in the trial court, and the judgment is therefore affirmed. All concur.